IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**AMBER HINTON**                                                                              **PLAINTIFF**

v.                                                   CIVIL ACTION NO.: 1:22cv213 LG-BWR

**CITY OF PICAYUNE, MISSISSIPPI**                                          **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, Amber Hinton, by and through counsel, Watson & Norris, PLLC, files this action against her former employer, Defendant, City of Picayune, Mississippi. As more specifically set forth below, Defendant discriminated against Plaintiff because of her sex (female) in violation of Title VII of the Civil Rights Act of 1964. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1. Plaintiff, Amber Hinton, is an adult female resident citizen of Pearl River County, Mississippi.

2. Defendant, City of Picayune, Mississippi, may be served with process by serving Sid Albritton, City Clerk, 203 Goodyear Boulevard, Picayune, Mississippi 39466.

**JURISDICTION AND VENUE**

3. This Court has federal question jurisdiction for actions that arise under Title VII.

4. This Court has personal and subject matter jurisdiction over the Defendant and venue is proper in this Court.

5. Plaintiff timely filed a Charge of Discrimination with the EEOC for sex

1

discrimination on November 23, 2021, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on May 17, 2022, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this Complaint within 90 days of receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

6. Plaintiff is a 43-year-old female resident of Pearl River County, Mississippi.

7. Defendant hired Plaintiff on August 14, 2006, as a Senior Accountant/Comptroller at the City of Picayune.

8. Then, on October 17, 2011, Defendant promoted Plaintiff to the position of City Clerk.

9. Plaintiff was qualified for and held the position of City Clerk for ten years.

10. During that time, Plaintiff's position operated under the Council-Manager form of government.

11. Jim Luke was the City Manager during Plaintiff's tenure as City Clerk until July 1, 2021, when Mr. Luke was elected Mayor.

12. At that time, Plaintiff submitted her resume to the City Council for its consideration of her for the position of City Manager.

13. On July 6, 2021, the Picayune City Council met.

14. Freddy Drennan was appointed City Manager and Plaintiff was reappointed as City Clerk by unanimous vote.

15. At the time this decision was made, Plaintiff had not quite 15 years of municipal government experience, ten of which were spent by her as the City Clerk of Picayune.

15. Mr. Drennan had eight years of experience as a police chief and then eight years as a mayor of a different city in a different state.

16. Later in that that same meeting, the City Council passed a motion stating that the City Clerk, Deputies, and the Office of the City Clerk were to be, from that point forward, solely administered and supervised by the City Manager.

17. Another motion was subsequently passed directing City Attorney Nathan Farmer to prepare an ordinance stating that the City Clerk, Treasurer, and Deputy Clerks would, from that point forward, be appointed by the City Manager and no longer by the Mayor and City Council.

18. This ordinance was approved on July 20, 2021, published on July 28, 2021, and took effect 30 days later, on August 27, 2021.

19. On October 5, 2021, Plaintiff overheard Assistant City Manager Harvey Miller state to his Deputy, Leann Smith, that an executive session item was to be added to the agenda entitled, Personnel Matter - City Organizational Chart.

20. That evening, at the end of the City Council meeting, Mr. Drennan told Plaintiff that she did not need to "hang around."

21. Mr. Drennan assured Plaintiff that any actions taken by the Council would be recorded by Mr. Farmer.

22. Plaintiff was concerned that this proposed action represented a possible violation of ethics.

23. On the next day, October 6, 2021, Plaintiff was called into Mr. Drennan's office.

24. Also in attendance in that meeting were Assistant City Manager Harvey

Miller and Mr. Farmer.

25. At that time, Plaintiff was informed that the City Council had directed Mr. Drennan to hire Sid Albritton male, as City Clerk despite the fact that he lacked any experience.

26. Plaintiff was further informed that she was being demoted to the position of Deputy Clerk and her pay would be cut by $7,000 per year.

27. Since Mr. Albritton had no municipal government experience, he would initially be hired as a Deputy Clerk and Plaintiff was directed to train him to take on the City Clerk role.

28. It is noteworthy that Plaintiff holds a Master Municipal Clerk designation by the International Institute of Municipal Clerks while Mr. Albritton does not which made Plaintiff significantly more qualified than her replacement.

29. Plaintiff questioned the legitimacy of this decision to the others in the meeting, but no response of any substance was made.

30. Mr. Miller stated, "This is politics."

31. Mr. Drennan stated that Plaintiff had always performed her job very well, yet this decision had been made.

32. Mr. Farmer sent a text to Plaintiff in which he stated, "It was my pleasure and privilege to work with you. If you need a recommendation or reference, it will be my honor to give you one…".

33. Given these circumstances, Plaintiff had no alternative but to submit a written letter of resignation later that same day.

34. In her resignation letter, Plaintiff wrote, "I feel I'm being discriminated against...for being a female…" and "Under different circumstances, I'm sure we would have continued to work well together."

35. It is clear from these statements that Plaintiff was forced to resign for no other reason than because she had been discriminated against due to her sex.

36. On November 23, 2021, Plaintiff filed an EEOC Charge of Discrimination due to sex.

37. On January 25, 2022, the City of Picayune responded to Plaintiff's EEOC Charge with a Position Statement.

38. The City's Position Statement alleges that Plaintiff was "of the opinion that she worked for the mayor and council who had appointed her as opposed to the city manager."

39. Plaintiff contends this is false.

40. Plaintiff maintains she has always been fully aware that she was appointed by the Mayor and the City Council yet as a department head she operated under the supervision of the City Manager.

41. The City's Position Statement alleges that Plaintiff "was known to play favorites" and "at least some elected officials and city employees viewed Hinton as divisive and untrustworthy."

42. Plaintiff asserts this is false.

43. Plaintiff maintains she has always acted in good faith, with the City Council as a whole, unless she was specifically asked to keep something private.

44. Plaintiff further notes she has worked with four of the current council members for approximately ten years, and in that time, she has never been reprimanded or counseled by them.

45. Moreover, Plaintiff contends it is Mr. Luke who is known for the common practice of meeting with certain council members and excluding others.

46. The City's Position Statement alleges that "By October 2021, City Manager Drennan had determined how he wanted to handle the city clerk position."

47. This statement falsely implies that it was Mr. Drennan's decision to demote Plaintiff to the position of Deputy Clerk and then have her train Mr. Albritton.

48. Conveying a similar false implication, the Position Statement alleges that "City Manager Drennan was of the opinion that Albritton, an individual seasoned in the field of accounting and state government, would be capable of assessing the city clerk's office in the face of distrust created by Hinton."

49. Plaintiff asserts this statement is false, first, because she was told the selection of Mr. Albritton to be groomed for the City Clerk position was made at the direction of Mayor Luke and the city council, not Mr. Drennan.

50. Mr. Drennan, in fact, informed the city council that Plaintiff had worked very well with him, completed every task he had given her, and he did not want to see her go.

51. It is also noteworthy that the City Council was never allowed the opportunity to vote on the decision to demote Plaintiff and for she and Mr. Albritton to work as Deputy Clerks until Mr. Albritton became adequately trained to be the City Clerk.

52. This decision was made unilaterally by Mayor Luke.

53. Plaintiff also notes that despite the City's allegation in its Position Statement that Mr. Albritton was "seasoned in the field of accounting and state government", the City hired a consulting firm for city clerk services and an accounting firm for end of the year payroll services.

54. By contrast, when Plaintiff was initially hired in 2006, the City hired a consultant and a CPA firm; however, Plaintiff did not claim at that time to be 'seasoned in municipal government.'

55. Moreover, Plaintiff was not hired at that time to replace someone already in that position.

56. The previous Senior Accountant/Comptroller had resigned months prior.

57. While Plaintiff worked for the City, there was never any need for hiring these types of firms because Plaintiff handled the city clerk duties with expert skill and knowledge.

58. Plaintiff is confident in her knowledge and skill because for much of the time she worked as City Clerk, Plaintiff handled duties that Mr. Luke was unknowledgeable about even though technically he was in a position of supervision over her.

59. The clearest example of this was the City's budget.

60. Along with her Deputy Clerk, Plaintiff worked tirelessly to manage the City's budget, while Mr. Luke had little input because he lacked knowledge and/or qualifications in that area.

61. This situation created obvious resentment for Mr. Luke because he knew Plaintiff's knowledge and ability in that arena surpassed his own.

62. Finally, the City's Position Statement alleges that Plaintiff was not "a team player".

63. Plaintiff adamantly denies this allegation.

64. Plaintiff contends she worked very hard and with good faith always for the benefit of the City of Picayune.

## COUNT I: TITLE VII- SEX DISCRIMINATION

65. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 64 above as if fully incorporated herein.

66. Defendant has discriminated against Plaintiff because of her sex based on the facts identified above which constitutes a violation of the Title VII of the Civil Rights Act of 1964.

67. Plaintiff has suffered lost wages, benefits and other pecuniary losses as well as deep, humiliation, anxiety and emotional distress.

68. The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back pay;
2. Reinstatement or front pay in lieu of reinstatement;
3. Lost benefits;
4. Compensatory damages;
5. Pre-judgment and post-judgment interest;
6. Tax gross-up and all make whole relief;
7. Attorney's fees;
8. Costs and expenses; and

9.  Any other relief to which she may be properly entitled.

THIS the 15th day of August 2022.

                                                      Respectfully submitted,

                                                     AMBER HINTON, PLAINTIFF

                                        By:  /s Louis H. Watson, Jr.
                                              Louis H. Watson, Jr.  (MB# 9053)
                                              Nick Norris (MB# 101574)
                                              Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, MS 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@watsonnorris.com
       nick@watsonnorris.com
Web:  www.watsonnorris.com

9